### (March 11, 1970)

HELEN M. KOZECKE, Respondent, v. STATE OF NEW YORK, Appellant. (Claims Nos. 47238, 48742.) — HERLIHY, P. J. Appeal by the State from judgments of the Court of Claims, entered December 30, 1968, awarding damages of $114,400 for the appropriation of improved real property. Prior to the first appropriation of the property in July of 1966 the subject premises consisted of a gasoline service station on a site of about 0.397± acre with 199.42± feet of frontage on Route 17 in the Town of Owego and a balance of 1.088± acres as undeveloped land. The appropriation in July of 1966 and February of 1967 took the entire premises. The gasoline station was leased in 1950 to an oil company which in turn subleased the station to an operator and at the time of appropriation the prime lease had about five years to run at a monthly rental of $250 to claimant. The record establishes that the sales at this site averaged about 1,000,000 gallons of gasoline and diesel fuel per year and that this was a substantially larger volume than any comparable properties. The trial court found that the land not involved in the service station site had a value of $10,000 and the appellant does not dispute that value. The appellant does not dispute that the rental reserved to claimant by the 1950 lease was obsolete and substantially less than the economic value of the property. Both parties introduced evidence of capitalization of income, the State utilizing a fair rental value of $400 per month and the claimant relying upon rental values based upon gallons of oil products sold. The trial court adopted, *inter alia,* the claimant's method and "arrived at an economic rental of 1¼ cents for the first 500,000 gallons and 1 cent for the balance, thus arriving at a gross income of $10,685.00." The State contends that as a matter of law rental value may not be based upon gallonage where there is no such actual lease between the owner of the fee and the subtenant. There can be no doubt that to some extent the number of gallons sold is dependent upon the management of the premises by the subtenant and is beyond the control of the fee owner. On the other hand, in this case there is evidence that the location of the premises was a large factor in the sale of oil products. The actual gallonage sold would be of great importance in any sale of the premises to an oil company as a purchaser and would very nearly dictate the potential value of the premises to such a purchaser. In this regard the State's appraisal lists a sale in the City of Binghamton on a through main street that the grantee estimated would do a volume of about 240,000 gallons in sales per year for a purchase price of $35,000. The subject premises did four times that much business. The claimant's appraisal includes a sale of an undeveloped 0.399± acre gasoline station site in the City of Binghamton about

one year after the appropriation at a price of $120,000. It does not appear that the location of comparable properties of gasoline stations in distance to each other is of particularly great importance and in the absence of proof showing such importance the primary factor would be as to what, if any, business potentials were related to the particular sites. In the present case we are not concerned with the general category of commercial property, but with the particular highest and best use of " gasoline stations ". The State does not contend that the values utilized by the court in arriving at economic rent are erroneous or without support and while it must be recognized that the amount of oil products actually sold on particular premises is greatly dependent on factors unrelated to the real property and its sites, the present record in its entirety supports the conclusion that the value arrived at by the trial court fairly represents the market value of the property. It would seem unrealistic to preclude reliance upon leasing considerations actually used in regard to gasoline service stations as long as there is other evidence in the record indicating a direct relationship between the location of the subject premises and the fair market value resulting from the capitalization of rental values based on gallonage leasing. It is not necessary, considering the well developed record, to premise affirmance solely on rental value based on the number of gallons sold by a sublessee. There were additional comparables which the court considered and a market value appraisal of $155,000 and it is quite obvious that the Judge of the Court of Claims did not rely entirely upon the evidence of either litigant but fixed a market value within the range of the testimony. (See Levin v. State of New York, 13 N Y 2d 87, 92, 93.) Judgment affirmed, with costs. Herlihy, P. J., Reynolds, Staley, Jr., Greenblott and Cooke, JJ., concur in memorandum by Herlihy, P. J.